UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DAWN T. GORTON, | |
| Plaintiff, | NO.  CV-12-00347-JLQ |
| v. | MEMORANDUM OPINION AND ORDER RE:  MOTIONS FOR SUMMARY JUDGMENT |
| CAROLYN W. COLVIN, Commissioner of Social Security[1], | |
| Defendant. | |

BEFORE THE COURT are Cross-Motions for Summary Judgment.  (ECF NO. 14 & 16).  Plaintiff is represented by attorney **Lora Lee Stover**.  Defendant is represented by Assistant United States Attorney **Pamela J. DeRusha** and Special Assistant United States Attorney **Franco Becia**.  This matter was previously before Magistrate Judge Imbrogno.  It was reassigned to the undersigned for all further proceedings on August 30, 2013.  The court has reviewed the administrative record and the parties' briefs.  The case was submitted for decision without oral argument on September 3, 2013.

This court's role on review of the decision of the Administrative Law Judge (ALJ) is limited.  The court reviews that decision to determine if it was supported by substantial evidence and contains a correct application of the law.  *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009).  This court is obligated to affirm the ALJ's findings if they are supported by substantial

_____

[1]Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Ms. Colvin is substituted for Michael Astrue as the Defendant in this suit.  No further action need be taken to continue this matter by reason of the last sentence of 42 U.S.C. 405(g).

ORDER - 1

evidence and the reasonable inferences to be drawn therefrom. *Molina v. Astrue*, 674 F.3d 1104, 1110-11 (9th Cir. 2012). Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion.

## I. JURISDICTION

In August 2009, Plaintiff/Claimant Dawn T. Gorton, then 40 years of age, filed an application for disability insurance benefits alleging a disability onset date of March 26, 2009, the date on which she underwent a spinal fusion surgery. Plaintiff alleged at the time of her application an inability to work due to back pain and heart palpitations. Her application was denied initially and on reconsideration. After a timely request, a hearing was held before Administrative Law Judge Caroline Siderius on November 30, 2010. (Transcript at ECF No. 10-2 pages 39-78). The ALJ issued a decision denying benefits on February 7, 2011. (ECF No. 10-2, p. 18-28). Plaintiff filed a request for review with the Appeals Council, which was denied on April 11, 2012. The decision of the ALJ became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g).

## II. SEQUENTIAL EVALUATION PROCESS

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a claimant shall be determined to be under a disability only if the impairments are of such severity that the claimant is not only unable to do her previous work but cannot, considering claimant's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987):

Step 1: Is the claimant engaged in substantial gainful activities? 20 C.F.R. §§ 404.1520(b), 416.920(b). If she is, benefits are denied. If she is not, the decision maker proceeds to step two.

Step 2: Does the claimant have a medically severe impairment or combination of impairments? 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step.

Step 3: Does the claimant's impairment meet or equal one of the listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity? 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Pt. 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step.

Step 4: Does the impairment prevent the claimant from performing work she has performed in the past? 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant is able to perform her previous work, she is not disabled. If the claimant cannot perform this work, the inquiry proceeds to the fifth and final step.

Step 5: Is the claimant able to perform other work in the national economy in view of her age, education and work experience? 20 C.F.R. §§ 404.1520(f), 416.920(f).

The initial burden of proof rests upon the Plaintiff to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). The initial burden is met once a claimant establishes that a

physical or mental impairment prevents her from engaging in her previous occupation. The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

### III. STANDARD OF REVIEW

"The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence and the [Commissioner] applied the proper legal standards." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989). This court may set aside a denial of benefits only if the basis for denial is not supported by substantial evidence or if it is based on legal error. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). It is the role of the trier of fact, not this court, to resolve conflicts in the evidence. *Richardson*, 402 U.S. at 400. If the evidence supports more than one rational interpretation, the court must uphold the decision of the ALJ. *Thomas*, 278 F.3d at 954 (9th Cir. 2002).

### IV. STATEMENT OF FACTS

The facts are contained in the medical records, administrative transcript, and the ALJ's decision, and are only briefly summarized here. At the time the ALJ

issued her decision, Plaintiff was 40 years old.  Plaintiff has a high school education.  Plaintiff's primary work history was in the healthcare field as a phlebotomist.  Plaintiff had worked full-time as a phlebotomist for approximately 8 years proceeding her alleged onset of disability in March 2009. (ECF No. 10, p. 151).  Past work experience also included telephone customer service representative and patient service representative in the years 1998 to 2001.

Plaintiff was experiencing back pain at least as early as March 2008, and underwent various treatment including steroid injections. (ECF No. 10, p. 265).  In March 2009, she underwent a spinal fusion surgery, and was originally expected to be on leave from work for three months to recover.  In June 2009, Plaintiff's surgeon, Dr. Bronson extended this period by two months.  In August 2009, Plaintiff filed her application for benefits, alleging she had been disabled since the date of the spinal fusion surgery on March 26, 2009.

## V.  COMMISSIONER'S FINDINGS

The ALJ found at **Step 1** that Plaintiff had not engaged in substantial gainful activity since March 26, 2009, the alleged onset date.  According to the earnings records, Plaintiff earned $10,248.28 in 2009 (ECF No. 10, p. 125), which approaches the substantial gainful activity level.  Presumably, most of these earnings occurred in the first three months of 2009, prior to her back surgery.

At **Step 2**, the ALJ found the medical evidence established the following severe impairments: degenerative disc disease and premature ventricular contractions (hereafter "PVC"). (ECF No. 10-2, p. 23).

At **Step 3**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d)). The ALJ found that Plaintiff's degenerative disc disease did not meet listing 1.04. The ALJ also found that Plaintiff's PVC did not meet any of the cardiovascular listings under section 4.01, and specifically did not meet the listing 4.05 for

recurrent arrhythmias.

At **Step 4**, the ALJ evaluated Plaintiff's residual functional capacity (RFC) and found that Plaintiff could perform light work and could return to her past relevant work as a phlebotomist, receptionist, or patient insurance clerk. (ECF No. 10-2, p. 24-27).

The ALJ did not reach **Step 5**, having concluded at Step 4 that Plaintiff could perform her past relevant work.

## VI. ISSUES

Plaintiff's briefing lists four issues for review: 1) that the ALJ erred in rejecting the opinions of Plaintiff's surgeon (Dr. Bronson) as to Plaintiff's back condition;  2) that the ALJ erred in assessing Plaintiff's RFC; 3) that the ALJ erred in assessing Plaintiff's credibility; and 4) that the ALJ erred in finding Plaintiff capable of performing past relevant work (ECF No. 15, p. 7-8).  Some of these arguments are limited.  The argument devoted to issue #2 concerning RFC appears in one paragraph on page 13 of Claimant's brief.  The argument in support of Issue #4 is not clearly delineated in Claimant's brief.  Apparently the argument is that the ALJ erred in posing an improper hypothetical to the vocational expert.

## VII. DISCUSSION

### A.  Did the ALJ err in Rejecting the Opinion of Plaintiff's Treating Surgeon, Dr. Bronson?

Plaintiff argues that the ALJ erred in rejecting the opinion of Plaintiff's treating physician who, in a follow-up exam to the March 2009 back surgery, opined in August 2009 that Plaintiff was not capable of returning to work and would likely be unable to work for twelve to eighteen months.  The ALJ directly addressed Dr. Bronson's opinion. (ECF No. 10-2, p. 27).  The ALJ gave the conclusion of inability to work "little weight...for a number of reasons." *Id*.  The ALJ explained that the conclusion was inconsistent with Dr. Bronson's findings of normal neurological exam and normal x-rays.  Further, the ALJ stated the opinion

was merely a "snapshot" as opposed to a longitudinal assessment of capacity to function.

As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  Clear and convincing reasons are required to reject the opinion of a treating provider. *Id.*    A conclusion by a health care provider that an individual cannot work is not binding on the ALJ. See 20 C.F.R. § 404.1527(d)(1)("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled.").

An overall review of the medical record supports the ALJ's determination that Dr. Bronson's August 2009 prediction as to the period of disability was unsupported by the record.  Plaintiff had the spinal fusion surgery on March 26, 2009.  At an April 14, 2009, office visit with Dr. Darin Eckert, Plaintiff is described as doing "extremely well" with only "mild" back pain, and is not taking pain medication. (ECF No. 11, p. 286).  However, Plaintiff then fell in early-May 2009, and went to Inland Neurosurgery and Spine for a check up.  At that time, she complained of increased pain and was taking some muscle relaxants and pain medication.  The diagnosis was lower lumbar strain which may set her back a week or more on her recovery, but radiographic images showed no evidence of breakage, loosening, or pulling out of the fusion hardware. (ECF No. 11, p. 239-240).  At an office visit of May 29, 2009, Plaintiff was two months post-surgery, was complaining of increased pain, and had recently stopped taking her pain medication. (ECF No. 11, p. 236).

Plaintiff had initially expected to miss three months of work, as described by Advanced Registered Nurse Practitioner Chad Bailey on Plaintiff's Family Medical Leave Act certification. (ECF No. 11, p. 379-380).  In June 2009, Dr. Bronson extended that by two months.  Then on August 18, 2009, Dr. Bronson

wrote that: "Dawn is in today for recheck.  She is at the six-month mark." (*Id*. at 231).  Plaintiff was actually just less than five months post-surgery.  Dr. Bronson notes that Plaintiff is having a lot of back pain, and that she is "off narcotics at this point."  He also states the "examination is relatively benign".  He then wrote: "It is continuing to disable her.  She is applying for long-term disability through work and I do feel that she is not capable of gainful employment at this time due to her back and I anticipate it will probably be a year to 18 months, if she will be able to return to work." (*Id*.).  He then recommends rehabilitation exercise, including lap swimming.  Thus, the ALJ's assessment that Dr. Bronson's conclusion is inconsistent with objective findings is supported by the record.  The examination was "relatively benign", the x-rays were normal, and Plaintiff was off pain medication, yet Dr. Bronson forecast 12 to 18 months of disability.  The ALJ provided clear and convincing reasons for rejecting Dr. Bronson's prediction of an additional 12 to 18 months of recovery time from the back surgery.

In September 2009, Plaintiff went to the Deaconess Medical Center Emergency Room for back pain, but left without being seen. (ECF No. 11, p. 442). She also went to the Deaconess E.R. on October 14, 2009, for what is described in the notes as a "one-day history of lower back pain." (*Id*. at 439).  The note further described that Plaintiff was having increased pain twice per week.  Dr. Chaganur describes, after examining her, that Plaintiff was in "mild pain" and prescribed some pain medication.

The Defendant initially denied benefits in a letter dated January 26, 2010. At that time, Plaintiff was 10-months post-surgery and the letter stated in part: "We realize that you are presently unable to work, but your condition is not expected to prevent you from working for 12 consecutive months." (ECF No. 10, p. 79).  One month later, at a February 23, 2010 office visit with Dr. Eckert, his note describes that Plaintiff is not taking pain medication and she "feels strong enough to return to work." (ECF No. 11, p. 329).  Dr. Scottolini's case analysis,

dated March 23, 2010, states that Plaintiff had "excellent results" from her back surgery, the clinical evidence did not support that she is now worse, and she is engaged in an active lifestyle. (*Id.* at 382). Although recovery from Plaintiff's back surgery took longer than originally predicted, the ALJ's finding that the evidence did not establish a twelve month period of disability is supported by substantial evidence. This court must "uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation." *Cantrall v. Colvin*, __F.3d__(9th Cir. Sept. 13, 2013) citing *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005).

### (I) **Premature Ventricular Contractions ("PVC")**

The foregoing discussion of the medical evidence record has primarily focused on Plaintiff's back condition and spinal surgery. The ALJ also found that Plaintiff's PVC were a severe impairment. The ALJ found this impairment, taken separately or in combination with her back condition, did not render Plaintiff disabled. At least as early as August 2008, Plaintiff experienced the PVC. At an office visit with Dr. Eckert on August 8, 2008, he notes that Plaintiff has been largely "asymptomatic" and will "rarely" notice a rapid heart rate. (ECF No. 11, p. 376). An EKG confirmed frequent PVC and Dr. Eckert recommended Plaintiff avoid caffeine. In September 2009, Plaintiff underwent an Echocardiography with exercise test, which showed all chambers of heart to be within normal limits for size and function and "no abnormalities noted." (ECF No. 11, p. 300). The test did show "occasional PVCs" in recovery from exercise, but the overall conclusion was "normal stress echo". (*Id.*). Dr. Scottolini in his March 2010 report wrote that Plaintiff's "heart disease is not a signif. problem". (*Id.* at 382). In April 20011, Dr. Stagaman, a cardiologist, wrote that Plaintiff was on prescription medication for her PVCs and is "100% better with minimal palpitations" and increased energy. (ECF No. 11, p. 472).

B.  **Did the ALJ err in Assessing Plaintiff's Residual Functional Capacity**?

At page 13 of the Plaintiff's brief (ECF No. 15), Plaintiff argues that the ALJ did not account for how Plaintiff's pain would affect her ability to attend and concentrate, or how stress in the workplace would affect her overall abilities. Plaintiff cites to no record evidence in support of this argument.  The record does not support a conclusion that Plaintiff had difficulties with concentration or stress in the workplace.  Plaintiff's self-report and that of her fiancee indicated she deals well with stress.  (ECF No. 10, p. 168-69; 176-77).  Her functional report details no problems with concentration. Dr. Fitterer's Psychiatric Review found no mental impairments and noted that Plaintiff "doesn't allege concentration/memory/understanding problems, handles stress and change well." (ECF No. 11, p. 395).  Plaintiff has not demonstrated that the ALJ erred in assessing Plaintiff's RFC.

C.  **Did the ALJ err in Assessing Plaintiff's Credibility**?

The ALJ found Plaintiff was not entirely credible as to the intensity, persistence, and limiting effects of her symptoms. (ECF No. 10-2, p. 25).  The ALJ found the medical record did not support the claimed degree of limitation.  The ALJ cited to the office note of Dr.Eckert, just one month after back surgery, which stated Plaintiff was doing "extremely well" in her post-surgery recovery.  The ALJ also cited to additional medical records in November and December 2009, approximately 8-months post-surgery.  (*Id*.).  The ALJ further found that Plaintiff's activity level did not support her allegation of disability.  (*Id*. at 26).  The ALJ noted that several of Plaintiff's physician's encouraged her to do more exercise, and that Dr. Scottolini stated Plaintiff, "engaged in an active lifestyle that is incongruent with her allegations of worsening symptomology." (*Id*.)

Credibility determinations are for the ALJ.  It is the role of the ALJ to assess credibility and weigh the evidence, "[w]here the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).  From this court's review of the record, Plaintiff appears to have been quite candid at the administrative hearing.  Plaintiff indicated that she thought her back pain would not prohibit her from doing a job where she could alternate sitting and standing. (ECF No. 10, p. 50).  She testified she was not taking any pain medication for her back. (*Id*. at 52).  She also testified that she did not have any psychological problems, including depression or anxiety. (*Id.* at 53).  She testified that although she had asthma, the attacks never would impair her from being on the job site. (*Id.* at 61).

There is also evidence of record which supports the ALJ's analysis of Plaintiff's credibility, or the lack thereof.  For example, Plaintiff initially applied for benefits based on her back condition and PVC, however on application for reconsideration Plaintiff claimed to suffer from several other conditions, including knee and shoulder pain, irritable bowel syndrome, headaches, and depression. (ECF No. 10, p. 183).  At the hearing before the ALJ, Plaintiff returned to allegations of back pain and PVC, and specifically disclaimed any problems with depression.  The court notes that the application for reconsideration was prepared by a non-attorney employee of Allsup, Inc., a for-profit company that assists claimants in obtaining Social Security benefits.  Thus, the discrepancy may be the fault of that employee.  Additionally, at the hearing before the ALJ Plaintiff gave somewhat inconsistent testimony, at times indicating that her back pain had improved and her chest pain was now the problem, and at other times stating the back pain was her "main problem."  Additionally, the ALJ found that Plaintiff had failed to follow medical advice.  Specifically, she had not quit smoking, despite repeated advice to do so, and at times she had failed to take her PVC medication. (ECF No. 10, p. 26).  A failure to follow treatment advice can support an adverse

credibility determination.  <u>See</u> *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012)("We have long held that, in assessing a claimant's credibility, the ALJ may properly rely on unexplained or inadequately explained failure to seek treatment or follow a prescribed course of treatment.").  The ALJ did not err in assessing Plaintiff's credibility.

D.  **<u>Did the ALJ err at Step 4 in finding Plaintiff could perform Past Relevant Work</u>?**

Plaintiff argues that the ALJ posed an improper hypothetical to the vocational expert by not fully representing Plaintiff's impairments and pain complaints.  The ALJ's hypothetical was based on the RFC, and as discussed *supra,* the RFC determination is supported by substantial evidence.  An ALJ is required to include only those limitations she finds supported by substantial evidence in her hypothetical question. *Osenbrock v. Apfel*, 240 F.3d 1157, 1162-63 (9th Cir. 2001).  The ALJ did not err in framing the hypothetical questions or relying on the vocational expert's testimony.

## VIII. CONCLUSION

The Commissioner's and ALJ's decision is supported by substantial evidence in the record and is based on proper legal standards. It must therefor be affirmed.  *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

**IT IS HEREBY ORDERED:**

1.  Plaintiff's Motion for Summary Judgment (ECF No. 14) is **DENIED**.

2.  Defendant's Motion for Summary Judgment (ECF No. 16) is **GRANTED.**

3.  The Clerk is directed to enter Judgment dismissing the Complaint and the claims therein with prejudice.

**IT IS SO ORDERED**.  The District Court Executive is directed to file this Order, enter Judgment as directed above, and close this file.

DATED this 16th day of September, 2013.

s/ Justin L. Quackenbush
JUSTIN L. QUACKENBUSH
SENIOR UNITED STATES DISTRICT JUDGE